## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| ) | |
| ) | |
| **NOELLE-MARIE HARRINGTON,** ) | |
| **by her mother and next friend,** ) | |
| **CORRINE HARRINGTON,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No: 15-cv-12769-DJC** |
| ) | |
| **CITY OF ATTLEBORO, RICHARD** ) | |
| **GEORGE, DOUGLAS SATRAN, PATRICIA** ) | |
| **KNOX, MARK DONNELLY, JEFFREY** ) | |
| **NEWMAN and ELIZABETH YORK,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

_____)

## MEMORANDUM AND ORDER

CASPER, J.                                                              March 16, 2016

## I.      Introduction

Plaintiff Noelle-Marie Harrington ("Noelle"), by her mother and next friend Corrine

Harrington ("Corrine") (collectively, "Plaintiffs"), have filed this lawsuit against defendant City

of Attleboro ("Attleboro") and defendants Richard George ("George"), Douglas Satran

("Satran"), Patricia Knox ("Knox"), Mark Donnelly ("Donnelly"), Jeffrey Newman ("Newman")

and Elizabeth York ("York") (collectively, the "Administrators").  Plaintiffs allege violations of

Title IX, 20 U.S.C. § 1681 against Attleboro (Count I), violation of Noelle's Equal Protection

rights under the Fourteenth Amendment against Attleboro (Count II) and against the

Administrators (Count III) pursuant to 42 U.S.C. § 1983 and negligence claims against Attleboro

(Count IV).   D. 8.   Plaintiffs allege violations of the Declaration of the Rights of the Commonwealth of Massachusetts against Attleboro and the Administrators (Count V) and violations of Mass. Gen. L. c. 151C, § 2 (Count VI), Mass. Gen. L. c. 272, § 98 and c. 76, § 5 (Count VII) and Mass. Gen. L c. 93, § 102 (Count VIII) against Attleboro.   Id.   Corrine also brings a claim for loss of consortium against Attleboro and the Administrators (Count IX).   Id.   Defendants have moved to dismiss the complaint.   D. 12.   For the reasons stated below, the Court ALLOWS in part and DENIES in part the motion.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."   Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted). The Court reads the complaint "as a whole" and must conduct a two-step, context-specific inquiry.   García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).   First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory allegations.   Id.   Factual allegations must be accepted as true, while conclusory allegations are not credited.   Id.   Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."   Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation mark omitted).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).   To avoid dismissal, a complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"   García-Catalán, 734 F.3d at 102 (quoting Fed. R. Civ. P. 8(a)(2)).   Labels and conclusions or "'a formulaic recitation of the elements of a cause of action

will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  The Court draws on

its "judicial experience and common sense" in determining whether a claim crosses the

plausibility threshold.  García-Catalán, 734 F.3d at 103 (citation omitted).  "This context-specific

inquiry does not demand 'a high degree of factual specificity.'"  Id. (citation omitted).

## III.    Factual Background

The following allegations are from Plaintiffs' complaint, D. 8, and are accepted as true

for the purpose of considering the motion to dismiss.

Between 2008 and 2010, Noelle attended Brennan Middle School in Attleboro,

Massachusetts ("Brennan MS") which was operated by Attleboro.  Id. ¶¶ 10, 28.  While Noelle

was at Brennan MS, another student identified as "Thomas C." repeatedly called Noelle names

such as "slut," "whore" and "fat ass."  Id. ¶ 29.  At one point, Thomas C. told Noelle that "the

world would be a better place without you in it" and asked "why don't you just die already?"  Id.

Two other students at Brennan MS identified as "Chris H." and "Cam H." called Noelle "bitch,"

"slut" and "whore."  Id. ¶ 30.  Chris H. and Cam H. would regularly taunt Noelle and ask "will

you go out with me?"  Id.  When Noelle would say "no" Chris H. and Cam H. would call her

"dyke" and "faggot."  Id.  Plaintiffs notified employees at Brennan MS, including principals

George and Satran, assistant principals Knox and Donnelly and school psychologist Raymond

Lamore ("Lamore"), of her peers' conduct.  Id. ¶ 31.  Noelle also sustained injuries as a result of

certain physical assaults by one of these fellow students, Thomas C., including bruising, a

sprained ankle, and a fractured wrist, id. ¶¶ 32-36, and Plaintiffs notified George, Satran, Knox,

Donnelly and Lamore, of same.  Id. ¶ 37.  Plaintiffs were told that Lamore, the Brennan MS

psychologist and special needs coordinator, id. ¶ 16, and Knox, the assistant principal, id.

¶ 13, would "deal with" the problems created by Thomas C., Chris H., and Cam H, id. ¶ 38.

Plaintiffs contacted the Attleboro Police Department regarding Noelle's issues with other students at Brennan MS, but the police responded that this was a school issue and did not intervene.  Id. ¶ 40.

Starting in 2010, Noelle began at Attleboro High School ("AHS").  Id. ¶¶ 11, 41, 45.  As a matter of policy, Brennan MS did not transfer the records of the conduct Plaintiffs had complained of to AHS, id. ¶¶ 41-42, and Corrine did not have access to, or was told the contents of, those records, id. ¶ 50.  At AHS, Noelle and Thomas C. were placed in the same freshmen classroom.  Id. ¶ 46.  By February 2011, Thomas C. was poking Noelle in the back and calling her "dyke," "faggot," "whore," "bitch" and "slut."  Id. ¶ 47.  Plaintiffs notified the employees of AHS, including York, the assistant principal at the time, and Lamore, who essentially served as a guidance counselor for the situation, of this conduct.  Id. ¶ 48.  York claims to have spoken with Thomas C. about such conduct and that it would not be tolerated, but the conduct continued.  Id. ¶¶ 49, 51.

In May 2011, another AHS student, identified as "Becca M.," began calling Noelle names such as "slut," "whore" and "fat ass."  Id. ¶ 52.  AHS employees, including York, were made aware of such conduct.  Id. ¶ 54.  Later in October 2011, Noelle sprained her ankle in an automobile accident and had to walk on crutches in school.  Id. ¶ 55.  Certain unidentified students at AHS taunted Noelle and said that the only reason she was on crutches was because her body could not support her weight.  Id. ¶ 56.  Noelle notified AHS employees, including York, of such conduct.  Id. ¶ 57.  York informed Plaintiffs that she spoke with the students who witnessed such conduct, but was unable to identify the perpetrators.  Id. ¶¶ 58-59.  In January 2012, similar conduct continued and Noelle suffered a panic attack when she saw Chris H. and Cam H. at the Registry of Motor Vehicles.  Id. ¶ 60.  Noelle failed her driver's license test.  Id.

On January 11, 2012, a "Safety Plan" was prepared to use while Noelle was at AHS.  Id. ¶ 61.   The plan acknowledged Noelle's right to report instances of harassment to school administrators and to access the nurse "in times of stress."  Id. ¶ 62.   The plan also allowed Noelle to leave class early to get to her next class and avoid the students she had issues with in the hallways.  Id.

In February 2012, Thomas C. followed Noelle and some of her family members from the library to Plaintiffs' home.  Id. ¶ 66.   Corrine told Thomas C. to leave the property or she would call the police.  Id.  Shortly thereafter, Corrine visited AHS and informed York of Thomas C.'s conduct.  Id. ¶ 67.   York said that Thomas C.'s conduct would not be addressed as it occurred outside of school and on Plaintiffs' property.  Id. ¶ 68.

Also in February 2012, Noelle and Chris H. were placed in the same class.  Id. ¶ 63.   Plaintiffs informed employees of AHS of Noelle's prior issues with Chris H. and Noelle's schedule was rearranged.  Id. ¶¶ 64-65.   Friends of Chris H., identified as "Ollie G." and "Andrew M.," remained in the class with Noelle.  Id. ¶¶ 65, 71-72.  In February 2012, Andrew M. shined a laser pointer into Noelle's eye and asked repeatedly "why are you mad?"  Id. ¶ 71.  The classroom teacher sent Andrew M. out of the class, but he passed the laser pointer to Ollie G. who continued to shine the laser pointer into Noelle's eyes.  Id. ¶¶ 71-72.  After class, Noelle sought treatment from the school nurse and explained what had happened.  Id. ¶ 73.  The school nurse contacted Corinne who in turn contacted York who did not provide more information about the incident.  Id. ¶ 74.  Plaintiffs attempted to file a complaint with the Attleboro Police Department, but were told that the school police officer would have to handle the complaint.  Id. ¶ 76.  It is further alleged that the school police officer failed to respond to Plaintiffs' complaints

regarding same.  <u>Id.</u>  Plaintiffs were later informed that Andrew M. was suspended for three days.  <u>Id.</u> ¶ 77.

Following Andrew M.'s suspension, his friends Ollie G. and a student identified as "Nakia S." began calling Noelle a "snitch" and telling her that "the world would be better off without dykes like her in it."  <u>Id.</u> ¶ 78.  When Andrew M. was injured during his suspension, Nakia S. blamed Noelle.  <u>Id.</u>

During these incidents in February 2012, Corrine discovered a Facebook post by Noelle stating that "when the bullying got worse, I thought about whether or not people would regret the things they did if I committed suicide."  <u>Id.</u> ¶ 80.  Corrine brought a printed copy of the post and met with employees at AHS, including York.  <u>Id.</u>  ¶ 81.  York told Corrine that the school could not do anything and that Noelle needed professional help.  <u>Id.</u> ¶ 82.  Corrine informed employees at AHS, including York, that Plaintiffs wanted to transfer Noelle to another school, but they did not assist in placing Noelle.  <u>Id.</u> ¶ 83.  Corrine then brought Noelle to her pediatrician who referred Noelle to a crisis center for evaluation.  <u>Id.</u> ¶ 84.  The "crisis team" instructed Corrine not to return Noelle to AHS, and Noelle was registered at the Westwood Lodge day treatment center for psychotherapeutic care.  <u>Id.</u>  ¶¶ 84-86, 88.  Corrine formally withdrew Noelle from AHS on March 1, 2012.  <u>Id.</u> ¶ 87.

## IV.   Procedural History

Plaintiffs instituted this action in Bristol Superior Court on February 27, 2015.  D. 8.  Defendants removed the action to federal court on June 23, 2015.  <u>Id.</u>; D. 1.  Defendants have now moved to dismiss the complaint.  D. 12.  The Court heard the parties on the pending motion and took the matters under advisement.  D. 27.  Following the hearing, Defendant Douglas

Satran filed an assented to motion to join Defendants' motion to dismiss, D. 29, which the Court granted, D. 30.

## V.      Discussion

### A.      Count I – Title IX

In Count I, Noelle alleges violations of Title IX against Attleboro[1] for failing to protect her from peer-on-peer sexual discrimination and harassment.  D. 8 ¶ 107.  Accepting Plaintiffs' allegations as true, Plaintiffs states a plausible Title IX claim.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  To state a claim under Title IX for student-on-student sexual harassment, a plaintiff must show:

> (1) that he or she was subject to "severe, pervasive, and objectively offensive" sexual harassment by a school peer, and (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits ... (3) [the funding recipient] knew of the harassment, (4) in its programs or activities and (5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances.

Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007).

To constitute sex-based discrimination under Title IX, the alleged name calling, comments and physical assault of Noelle by her peers, D. 8 ¶ 29-30, 32-36, 47, 52, 56, 71-73, must have been because of her sex.  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  Relevant here, sex based discrimination can be based on sex stereotypes.  See, e.g.,

---

[1] The enforcement mechanism of Title IX "includes an implied private right of action but this private right of action extends only to claims against the educational institution itself."  Rinsky v. Trustees of Boston Univ., No. 10-cv-10779-NG, 2010 WL 5437289, at *12 (D. Mass. Dec. 27, 2010) (citing Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988)) (internal citation omitted).

Lipsett v. University of Puerto Rico, 864 F.2d 881, 905-06 (allowing sex discrimination claims under Title IX based on harassment by male physicians who believed women should not be surgeons); Snelling v. Fall Mountain Reg'l Sch. Dist., No. 99-cv-448-JD, 2001 WL 276975, at *4 (D.N.H. Mar. 21, 2001) (holding that harassment based on stereotypes of masculinity actionable under Title IX).

While at Brennan MS and AHS, both male and female peers allegedly commented on Noelle's body size, D. 8 ¶¶ 29, 52, and would call Noelle names "charged with anti-female animus," id. ¶¶ 29-30, 47, 52; see Lipsett, 864 F.2d at 905; cf. Doe v. Galster, 768 F.3d 611, 617 (7th Cir. 2014) (recognizing previous holdings that, in the employment context, "gendered words like bitch and whore . . . can be strong evidence that the harassment at issue is on the basis of sex," but noting that in the school context, at least early on, "[c]hildren are often less aware of the import of their words and actions").  At Brennan MS, male peers would also ask Noelle out on dates and then call her names when she refused.  D. 8 ¶ 30; see J.R. v. New York Cty Dept. of Ed., No. 14-cv-0392-ILD-RML, 2015 WL 5007918, at *6 (E.D.N.Y. Aug. 20, 2015) (holding that bullying based on male plaintiff's feminine mannerisms supported a Title IX claim).

These allegations plausibly state a Title IX claim because Noelle appears to have been the subject of discrimination because of her sex.  Plaintiffs' allegations regarding the conduct of Noelle's peers are not simply "tinged with offensive sexual connotations," Oncale, 523 U.S. at 81, but appear to "constitute[] '*discrimina[tion]* . . . because of . . . sex.'"  Id. (emphasis in original); cf.  Morgan v. Town of Lexington, No. 14-cv-13781-DJC, 2015 WL 5634463, at *9 (D. Mass. Sept. 24, 2015) (dismissing Title IX claim where allegations of demeaning conduct, e.g., pulled down student's pants, was not because of the plaintiff's sex).  The name calling and assaults against Noelle were not only deplorable and hurtful, but appear to be based on sexual

stereotyping—that Noelle, whether because of her physical appearance, mannerisms or sexual preference, did not conform to certain female stereotypes—rather than because of some other characteristic that is not protected by Title IX.  D. 8 ¶¶ 28, 45, 56; see, e.g., Lipsett, 864 F.2d at 905-06; Snelling, 2001 WL 276975, at *4.

Having adequately pled that Noelle's harassment by her peers was because of her sex, and concluding that the conduct was severe, pervasive and objectively offensive and interfered with Noelle's education,[2] a question remains as to whether Plaintiffs have plausibly alleged that Attleboro was "deliberately indifferent to the harassment such that its response (or lack thereof) [was] clearly unreasonable in light of the known circumstances."  Porto, 488 F.3d at 73. Deliberate indifference is "a stringent standard of fault" that requires proof that a plaintiff "disregarded a *known or obvious* consequence of his action or inaction."  Id. (emphasis in the original) (quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (quotation mark omitted).  As discussed by the First Circuit, a Title IX claim that "the school system could or should have done more is insufficient to establish deliberate indifference."  Id.  The First Circuit has suggested that a school might be deliberately indifferent if it had notice of sexual harassment or discrimination and did nothing or failed to take additional measures after its initial measures were ineffective.  See id. at 74 (citing Wills v. Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999)).

While it is true Attleboro employees took some action once they were put on notice of Noelle's harassment by her peers, Noelle continued to be harassed over the course of four years

---

[2] Defendants do not contest that the alleged conduct by Noelle's peers was severe, pervasive and objectively offense or that it deprived her of educational opportunities or benefits.  See D. 13 at 7-9.  Even as alleged, Noelle appears to have been harassed, both verbally and physically, at Brennan MS and AHS over an almost four-year period, ultimately resulting in her withdrawing from AHS.  D. 8 ¶¶ 30, 32-36, 47, 52, 71, 87.

in both middle and high school.  Considering how long Noelle's harassment persisted, and that many of her bullies were repeat offenders, see, e.g., D. 8 ¶¶ 31, 60, Plaintiffs have at least plausibly alleged this element as well, particularly as their allegations, at a minimum suggest that Attleboro "failed to take additional reasonable measures after it learned that its initial remedies were ineffective."  See Porto, 488 F.3d at 74; see also Thomas v. Springfield Sch. Comm., 59 F. Supp. 3d 294, 304 (D. Mass. 2014) (denying a motion to dismiss where defendant's deliberate indifference was a question of fact because "the school's actions demonstrate a complete lack of concern about sexual contacts" between the students at issue); Doe v. Bradshaw, No. 11-cv-11593-DPW, 2013 WL 5236110, at *11 (D. Mass. Sept. 16, 2013) (denying dismissal of the portion of a Title IX claim because there was a question of fact as to whether defendant school was deliberately indifferent to the sexual harassment of plaintiff by its soccer coach where the school failed to respond to reports that soccer coach had engaged in inappropriate conduct with another minor student before plaintiff was a student).  Accordingly, Defendants' motion to dismiss Count I is denied.

**B.     Counts II and III – Violations of Federal Rights by Attleboro and Administrators**

In Counts II and III, Plaintiffs bring § 1983 claims against Attleboro and the Administrators for violations of Noelle's rights under the Equal Protection Clause in failing to provide her "equal educational opportunity without sexual discrimination and/or sexual harassment."  D. 8 ¶ 119.[3]  Both Counts must dismissed because Plaintiffs fail to adequately

---

[3] While Counts II and III discuss "without limitation" various constitutional rights including equal protection and due process under the Fourteenth Amendment, D. 8 ¶ 119, Plaintiffs' arguments in their opposition only address equal protection and do not address Defendants' arguments regarding § 1983 liability for due process and Title IX violations, D. 26 at 17-20. Accordingly, the Court considers Plaintiffs only to be pressing equal protection as the basis of Counts II and III.

allege that Noelle was afforded a lower level of protection from harassment than her peers as a result of her membership in a protected class.  See, e.g., Pollard v. Georgetown Sch. Dist., No. 14-cv-14043-DJC, 2015 WL 5545061, at *5 (D. Mass. Sept. 17, 2015).

The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group."  Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-106 (1st Cir. 2015).  To state a § 1983 claim based on violations of the Equal Protection Clause, a plaintiff "must allege facts plausibly demonstrating that compared with others similarly situated" the plaintiff was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Id. at 106 (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)) (internal quotation marks omitted).  "Typically, a plaintiff asserting an Equal Protection Clause violation 'must identify his [or her] putative comparators' to make out a threshold case of disparate treatment." Doe v. Town of Stoughton, No. 12-cv-10467-PBS, 2013 WL 6498959, at *2 n.3 (D. Mass. Dec. 10, 2013) (quoting Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011)).

Plaintiffs, however, fail to allege any facts or argue in their opposition that Attleboro or the Administrators treated the harassment of Noelle by her peers differently than that of any other student, let alone that such treatment was because of her membership in a protected class. See, e.g., Schofield v. Clarke, 769 F. Supp. 2d 42, 48 (D. Mass. 2011) (dismissing equal protection claim where the plaintiff "fail[ed] to set forth any facts showing that he was treated differently from others who were similarly situated").  To the extent Plaintiffs are asserting equal protection violations based on a "class of one" theory, Plaintiffs' failure to identify peers in which to compare Noelle forecloses such a theory.  See Freeman v. Town of Hudson, 714 F.3d

29, 38 (1st Cir. 2013) (reiterating that "class-of-one claims require 'an extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves'") (citation omitted).  Plaintiffs' insufficient allegations thus require dismissal of Counts II and III.

### C.      Count IV – Tort claims against Attleboro

Plaintiffs bring tort claims against Attleboro for the "injuries caused by the negligent acts and omissions" of its employees and Administrators in handling Noelle's bullying and harassment, D. 8 ¶¶ 132-133, the negligence of its Administrators in failing to investigate Noelle's bullying and harassment and discipline or expel the relevant students, id. ¶ 133, and for the negligence of Attleboro's school committee in "hiring, retaining and supervising" the Administrators who failed to adequately address Noelle's bullying and harassment, id. ¶ 134.

As this Court has previously discussed, "a party asserting a negligence claim against a public employer must first present her claim in writing to the public employer's executive officer."  Pollard, 2015 WL 5545061, at *3 (citing McCarthy v. City of Newburyport, 252 Fed. Appx. 328, 334 (1st Cir. 2007)).  The presentment requirement of the Massachusetts Tort Claims Act ("MCTA") is set forth in Mass. Gen. L. c. 258, § 4, providing:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . .

Presentment is a condition precedent to Plaintiffs' negligence claims and must "be made 'in strict compliance with the statute.'"      Gilmore v. Commonwealth, 417 Mass. 718, 721 (1994) (quoting Weaver v. Commonwealth, 387 Mass. 43, 47 (1982)).  All MTCA actions are subject to the presentment requirement unless specifically exempted by statute.  See Fearon v. Commonwealth, 394 Mass. 50, 53 (1985).  Relevant here, a plaintiff's status as a minor does not toll the two-year presentment requirement.  See George v. Town of Saugus, 394 Mass. 40, 41-44

(1985) (noting that "[p]resentment is a statutory prerequisite" that "must be met regardless of the age of the claimant"); see also Haley v. City of Boston, 657 F.3d 39, 54 (1st Cir. 2011) (discussing George and recognizing that while "the limitations period for filing suit may be tolled, the SJC has held that a plaintiff's inability to bring a suit does not toll the running of the presentment period"). The presentment requirement serves an important purpose by providing notice of the claim and to allow the public employer to investigate and consider settlement. See Carifio v. Town of Watertown, 27 Mass. App. Ct. 571, 576 (1989) (citations omitted).

Plaintiffs allege that they complied with the presentment requirement by filing a written demand on February 28, 2014, D. 8 ¶ 140, and attach a copy of the letter addressed to Attleboro's Office of the Mayor. D. 8 at 48. Liberally construing Plaintiffs' allegations, it appears that the date of the last harassment or bullying incident occurred sometime in February 2012. Where Plaintiffs do not provide specific dates indicating when the last instance of harassment or bullying occurred, an issue remains as to whether Plaintiffs' February 2014 presentment letter was filed within the MCTA's strict two-year requirement.

Assuming arguendo Plaintiffs satisfied the presentment requirement, Defendants also argue that Count IV must be dismissed because the facts Plaintiffs allege do not waive Attleboro's sovereign immunity under the MCTA. D. 13 at 21. Specifically, Defendants argue that Mass. Gen. L. c. 258, §§ 10(b) and (j) of the MCTA bars Plaintiffs' negligence claims. Id. Pursuant to § 10, a municipality's immunity is not waived for, among other things:

> (b) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused; . . .
>
> or

(j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer . . . .

Mass. Gen. L. c. 258, §§ 10(b) and (j).

Plaintiffs' claims based on the negligence of Attleboro's employees and Administrators in failing to properly address and investigate Noelle's bullying and harassment and to discipline Noelle's bullies, D. 8 ¶¶ 31-39, 47, 49, 61-64, 77, 90, 98, 133, essentially questions the discretion of Attleboro's employees in dealing with student disputes.  As discussed by a court in this district in applying § 10(b) in a school bullying case, "[t]o the extent that the school's methods of managing student conflicts are discretionary, they cannot be the basis for a claim under the MTCA."  See Morgan v. Driscoll, No. 98-cv-10766-RWZ, 2002 WL 15695, at *7 (D. Mass. Jan. 3, 2002).   While the court in Driscoll recognized that the "basic supervision of students is generally considered to be an operational function," and thus not immunized by § 10(b), it held, in granting summary judgment, that the disciplinary decisions challenged by plaintiff in addressing racial harassment were "just the kind of policy-level disciplinary decisions that Massachusetts courts have deemed 'discretionary functions' within the scope of MTCA § 10(b)."  Id. (collecting summary judgment cases); see also Willhauck v. Town of Mansfield, 164 F. Supp. 2d 127, 137 (D. Mass. 2001) (recognizing that the case law suggests plaintiff's claim of negligence against a town based on its school employees placing a student with a violent past in a program for students with behavioral disorders who ended up severely injuring plaintiff is barred by § 10(b), but refusing to take up the issue in light of its conclusion that claim was otherwise barred by § 10(j)).  These cases, however, address whether a school and its employees were exercising a discretionary function at the summary judgment stage, after discovery, and not at the motion to dismiss stage where the plausibility standard governs.  See Comeau v. Town of

14

Webster, Mass., 881 F. Supp. 2d 177, 183-84 (D. Mass. 2012) (noting that "[a] court must analyze the specific facts of each case to decide whether discretionary acts involve policy making or planning") (citing Horta v. Sullivan, 418 Mass. 615, 621 (1994)).

Likewise, Plaintiffs also assert that Attleboro and its employees were negligent for refusing or failing to "implement existing School Committee policies and procedures" and argue that "[d]iscretionary function immunity does not apply in cases in which a government official's actions were mandated by statute or regulation." D. 26 at 20. Plaintiffs identify Policy JICB, "Anti-Bullying" when addressing arguments regarding § 10(j) immunity, rather than § 10(b), but assert that the policy required "school administrators and supervisors to make clear" that bullying would not be tolerated, but that Attleboro's employees "did not make clear to Noelle-Marie's assailants that their abuse would have severe consequences." D. 26 at 22; D. 8 ¶ 133. Liberally construing Plaintiffs' allegations, the Court cannot determine, at this stage, that Plaintiffs' claims are foreclosed by § 10(b).

Plaintiffs' negligence claims, however, are precluded under another subsection of § 10, namely § 10(j). Section 10(j) "bars claims based on a failure to act to diminish the harm caused by a situation, as long as that situation 'is not originally caused by the public employer or any other person acting on behalf of the public employer.'" Bradshaw, 2013 WL 5236110, at *12 (citations omitted). The Supreme Judicial Court has interpreted an "original cause" under § 10(j) to mean "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." Kent v. Commonwealth, 437 Mass. 312, 318 (2002). Notably, courts have characterized § 10(j) as presenting "an interpretive quagmire" containing "convoluted and ambiguous" language, but have ultimately determined that its "principal purpose . . . is to preclude liability for failures to prevent or diminish harm,

including harm brought about by the wrongful act of a third party." Brum v. Town of Dartmouth, 428 Mass. 684, 692-96 (1999); see also Doe v. Dubeck, No. 05-cv-11163-RWZ, 2006 WL 1704261, at *3 (D. Mass. June 19, 2006) (same).

Plaintiffs argue that Attleboro and its employees' failure to implement certain policies and procedures regarding bullying and to properly investigate and discipline those involved in Noelle's bullying waives Attleboro's sovereign immunity under § 10(j). D. 26 at 20-23; D. 8 ¶¶ 39, 54, 69, 79, 92, 99, 102, 133-136. In the school bullying context, courts have dismissed claims against a school for its failure to prevent or address peer-to-peer bullying and harassment where the school cannot be considered the "original cause" of plaintiff's injury. See Dubeck, 2006 WL 1704261, at *3 (dismissing negligence claims against town and school district and noting that "[c]ourts have repeatedly held that a school district does not 'originally cause[ ]' tortious conduct merely by failing to prevent it"); Doe v. Old Rochester Reg'l Sch. Dist., 56 F. Supp. 2d 114, 121 (D. Mass. 1999) (dismissing negligence claims and recognizing that "[e]ven if the School District ignored the Does' complaints about harassment by other students, there are no allegations that it 'originally caused' the students to harass Jane Doe").[4] Thus, even accepting as true Plaintiffs' allegations that Attleboro and its employees failed to implement certain policies addressing bullying or that its response to Noelle's bullying was inadequate, Plaintiffs have not adequately allege that Attleboro or its employees "materially contributed" to creating a specific situation such that they "originally caused" Noelle's harassment and bullying by her peers. See Bradshaw, 2013 WL 5236110, at *12 (recognizing that, in applying § 10(j), "[u]nduly remote causes, however, are not actionable") (citing Kent, 437 Mass. at 317-18); see also Brum,

---

[4] The two cases Plaintiffs rely on do not address § 10(j) and are thus inapplicable. D. 26 at 22-23. Aside from discussing Kent, Plaintiffs do not otherwise cite a school bullying case that determined a school or its employees as the original cause of peer-to-peer bullying.

428 Mass. at 695 (cautioning against construing "'originally caused' so broadly as to encompass the remotest causation and preclude immunity in nearly all circumstances").

To the extent that Plaintiffs allege more here, those allegations still fall short of the § 10(j) bar.  First, Plaintiffs allege that Attleboro's hiring of the Administrators, as an affirmative act, can be construed as the "original cause" of the "condition or situation" that resulted in Noelle's bullying and harassment. D. 8 ¶ 134.  Plaintiffs, however, fail to allege how their hiring was negligent in the first place.  That is, there are no allegations that when the Administrators were hired they were unfit to address Noelle's harassment and bullying by her peers.  Id.; see Bradshaw, 2013 WL 5236110, at *12 (dismissing negligent hiring claim where plaintiffs failed to allege information that would have put school on notice that teacher had a propensity for sexual assault); see also Armstrong v. Lamy, 938 F. Supp. 1018, 1046 (D. Mass. 1996) (recognizing that "[a] claim for negligent hiring requires . . . evidence that the employer knew or should have known that the employee who was hired was unfit").  Once the Administrators were hired, claims that Attleboro negligently trained, supervised and retained the Administrators who purportedly failed to address Noelle's bullying and harassment by her peers still amount to claims for "failures to mitigate harm" and thus barred by § 10(j).  See Bradshaw, 2013 WL 5236110, at *13 (citing Armstrong, 938 F. Supp. at 1044 (allegation that "city employees failed to 'protect' [plaintiff], and failed to 'train,' 'supervise,' 'regulate,' 'control,' or 'correct' [defendant teacher]" were "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance")).

Courts have recognized, however, that the continued retention of an employee by a municipality after receiving notice of their unfitness can be considered an "affirmative act" unprotected by § 10(j).  See Bradshaw, 2013 WL 5236110, at *13 (citing Pettengill v. Curtis,

17

584 F. Supp. 2d 348, 367 (D. Mass. 2008); Bonnie W. v. Commonwealth, 419 Mass. 122, 126 (1994)).  In Bradshaw, and the cases it relied upon, a public defendant was considered the "original cause" of plaintiff's injury where it retained an employee it knew or had reason to know was dangerous, thus creating the condition or situation that resulted in harm to the plaintiff at the hands of that defendant's employee.  See Bradshaw, 2013 WL 5236110, at *12 (denying motion to dismiss claims against town for its negligent retention of school coach, following reports of sexual misconduct, who sexually harassed plaintiff); see also Pettengill, 584 F. Supp. 2d at 367 (refusing to dismiss claims against city for negligent promotion of employee who sexually assaulted plaintiff where city knew or should have known employee was abusing children prior to promotion); Bonnie W., 419 Mass. at 128 (reversing judgment in favor of Massachusetts for tort claims where parole officer recommended the continued employment of plaintiff's attacker by misrepresenting his criminal history).  By contrast, Attleboro or its employees cannot be considered the "original cause" of Noelle's injuries where there are no allegations suggesting that they actually bullied or harassed Noelle or enabled or encourage such conduct by her peers.  Even if Attleboro's employees negligently addressed Noelle's bullying and harassment, a claim based on Attleboro's continued retention of those employees is simply a claim for a failure to mitigate the harm caused by Noelle's peers, which is barred by § 10(j).  See Dubeck, 2006 WL 1704261, at *3; Old Rochester Reg'l Sch. Dist., 56 F. Supp. 2d at 121. Accordingly, Count IV is dismissed.

### D.    Count V - Massachusetts Declaration of Rights

In the addendum to Plaintiffs' opposition, Plaintiffs request that the Court dismisses Count V without prejudice.  D. 26-1 (the "Addendum").  Plaintiffs admit that Count V is a "novel claim" that is "not developed by Massachusetts state courts."  Id. at 1.  Specifically,

Plaintiffs "request that this Federal Court dismiss the claim without prejudice so that it may be developed in Massachusetts courts," id., and "permit the plaintiffs to reassert it in state court, if that proves necessary," id. at 11.[5]

"Courts in this district construe motions to withdraw some but not all of the claims against a particular defendant as motions to amend pleadings under Fed. R. Civ. P. 15 rather than motions to dismiss voluntarily under Fed. R. Civ. P. 41(a)." Momenta Pharm., Inc. v. Teva Pharm. USA, Inc., No. 10-cv-12079-NMG, 2014 WL 298027, at *2 (D. Mass. Jan. 24, 2014) (collecting cases); see Addamax Corp. v. Open Software Found., Inc., 149 F.R.D. 3, 5 (D. Mass. 1993) (recognizing that "Rule 15(a), Fed. R. Civ. P., is the proper vehicle to drop some but not all claims against a defendant or defendants"). The Court thus construes Plaintiffs' Addendum as a motion to amend its complaint to remove Count V. Id.

Relevant here, Fed. R. Civ. P. 15(a)(1)(B), allows a party to amend its complaint 21 days after service of a motion to dismiss. Defendants filed the instant motion to dismiss on July 27, 2015, D. 12, and Plaintiffs' opposition and Addendum were filed on October 9, 2015, D. 26, 26-1. Due to an apparent ongoing medical emergency in Plaintiffs' counsel's family, D. 20, Plaintiffs requested—with assent from Defendants—extensions to oppose Defendants' motion, D. 14, 16, 18, 20. Plaintiffs, however, did not request an extension of the 21-day period provided

---

[5] The Court notes that it has previously addressed a direct private right of action under the Massachusetts Declaration of Rights. In Podgurski v. Dep't of Corr., this Court could not conclude that a private right of action did not exist under the Massachusetts Declaration of Rights for violations of Article 26, prohibiting "cruel and unusual punishments," where prisoner brought claims for receiving inadequate medical care while incarcerated in Massachusetts prisons. 13-cv-11751-DJC, 2014 WL 4772218, at *7 (D. Mass. Sept. 23, 2014) (citations omitted); cf. Do Corp. v. Town of Stoughton, No. 13-cv-11726-DJC, 2013 WL 6383035, at *13 (D.Mass. December 6, 2013) (dismissing claim under the Massachusetts Declaration of Rights where claim could have been brought under MCRA for alleged violations of constitutional or statutory rights by threats, intimidation or coercion).

in Fed. R. Civ. P. 15(a)(1)(B) and the Court did not otherwise extend the period when granting Plaintiffs' requests.  D. 15, 17, 19, 21; <u>see</u> <u>Hayes v. D.C.</u>, 275 F.R.D. 343, 345 (D.D.C. 2011) (recognizing that the court's grant of an extension for plaintiff to file an opposition to a motion to dismiss did not "automatically effect an extension" of the 21-day period) (citation omitted).

Rather, Plaintiffs' request to amend their complaint falls under Fed. R. Civ. P. 15(a)(2) and the Court "should freely give leave when justice so requires."  None of the reasons to deny leave to amend—e.g., undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment and futility of amendment, <u>see</u> <u>Momenta Pharm., Inc.</u>, 2014 WL 298027, at *2 (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962))—are implicated here.  Moreover, Defendants have not opposed Plaintiffs' motion. Accordingly, the Court allows the motion and dismisses Count V without prejudice.

**E.      Count VI – Freedom from Sexual Harassment**

Plaintiffs bring claims against Attleboro and the Administrators for violations of the right to be free of sexual harassment by her peers in receiving public education under Mass. Gen. L. c. 151C, §2(g).[6]  To bring such claims, Plaintiffs must satisfy the administrative exhaustion requirement of Mass. Gen. L. c. 151B, § 9, made applicable to c. 151C under Mass. Gen. L. c. 214, § 1C.  Section 9 provides:

> Any person claiming to be aggrieved by a practice made unlawful under . . . chapter one hundred and fifty-one C, . . . may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief . . . .

---

[6] The Court notes that, at hearing on the motion, Defendants withdrew their argument regarding the statute of limitations under Mass. Gen. L. c. 151B, § 5, D. 13 at 5-7, due to tolling while Noelle was a minor, <u>see</u> Hr'g Tr. at 1-2.

Mass. Gen. L. c. 151B, § 9.  Plaintiffs assert, without more, that they "timely filed a Charge of Discrimination" with the Massachusetts Commission Against Discrimination ("MCAD"), D. 8 ¶ 150, and that they "were given leave by the MCAD to withdraw their charge," id. ¶ 151.  If the requirement of § 9 is a condition precedent for the purposes of Fed. R. Civ. P. 9(c), however, Plaintiffs' allegations are presumably sufficient at this stage.  See Walton v. Nalco Chem. Co., 272 F.3d 13, 21 n.13 (1st Cir. 2001) (recognizing that "Rule 9(c) governs not only contractual conditions precedent, but statutory conditions precedent as well") (citations omitted); see also Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 80 (D. Mass. 2012) (discussing how if state statute's requirement that a mortgagee send notice of foreclosure prior to the date of the sale is a condition precedent plaintiff's conclusory allegations of compliance were sufficient under Rule 9(c)).  The Court need not decide whether § 9 contains a condition precedent because dismissal is warranted on other grounds.[7]

The only court in this district that has apparently addressed § 2 in the context of peer-to-peer sexual harassment held that § 2 is inapplicable.  See Doe, 2013 WL 6498959, at *5.  In Doe v. Town of Stoughton, the court declined to adopt an interpretation of the statute as applying to peer-on-peer harassment claims where the plain language of § 2(g) "contemplates a scenario in which the institution itself, through its administrators or employees, acts as the harasser."  Id. The court noted that § 2(g) states:  "It shall be an unfair educational practice for an *educational institution* . . . (g) [t]o sexually harass students in any program or course of study in any educational institution."  Id. (modification and emphasis in the original).  The court proceeded to

---

[7] The Court recognizes that § 9 requires claims to be brought within three years of the alleged unlawful practice and such period would be tolled and run from Noelle's eighteenth birthday. Pettengill v. Curtis, 584 F. Supp. 2d 348, 364 (D. Mass. 2008).  As discussed *supra*, Plaintiffs do not allege sufficient facts indicating when the last act of harassment occurred in February 2012 and, relevant here, when Noelle turned eighteen, such that Plaintiffs' § 2 claims may be untimely when this action was filed in late February 2015.

discuss how its interpretation accords with the approach of the MCAD in <u>Buschini v. Newburyport Public Schools</u>, 18 Mass. Disc. L. Rep. 216, 217 (1996) which rejected a claim against a town under chapter 151C based on the sexual harassment of one first grader by another. <u>Id.</u>  As recognized by the court, federal courts interpreting state law "'generally defer to a state agency's interpretation' of a statute the agency is charged with enforcing." <u>Town of Stoughton</u>, 2013 WL 6498959, at *5 (citation omitted).  Here, Plaintiffs do not allege that any of Attleboro's employees sexually harassed Noelle and Plaintiffs do not address <u>Town of Stoughton</u> or point to any subsequent authority to the contrary.  D. 26 at 25.  As such, Plaintiffs' § 2(g) claims based on Noelle's sexual harassment by her peers fail and Count VI is dismissed.

## F.    Count VII – Freedom from Sexual Discrimination in a Place of Public Accommodation

Plaintiffs bring claims against Attleboro and the Administrators for violations of Noelle's right to be free from discrimination on the basis of her sex and sexual orientation in receiving public education pursuant to Mass. Gen. L. c. 272, § 98 and Mass. Gen. L. c. 76, § 5.  D. 8 ¶¶ 152-155.  Plaintiffs concede that their § 98 claim is not viable, and instead assert that their claim under Mass. Gen. L. c. 76, § 16 is valid.  D. 26 at 26.[8]  Section 16, titled "Children excluded from school; remedies" states:

> Any pupil who has attained age eighteen, or the parent, guardian or custodian of a pupil who has not attained said age of eighteen, who has been refused admission to or excluded from the public schools or from the advantages, privileges and

---

[8] The Court notes that Count VII, however, does not reference § 16 and instead references § 5. Plaintiffs state that they brought their "Count VII claim under both statutes but now recognize that their" § 98 claim is not viable, but that their § 16 claim is viable.  D. 26 at 26.  Thus, Plaintiffs concede that Count VII was brought under § 98 and § 16, but not § 5.  <u>See</u> <u>Doe v. D'Agostino</u>, 367 F. Supp. 2d 157, 178 (D. Mass. 2005) (noting that plaintiffs' claims for damages were improperly brought under § 5 where § 16, according to the Supreme Judicial Court "provides the exclusive remedy for a pupil seeking damages in tort, when a member of the school committee, principal, or teacher unlawfully excludes a pupil from a public school") (citing <u>Leonard v. School Comm. of Attleboro</u>, 349 Mass. 704, 706-07(1965)).

> courses of study of such public schools shall on application be furnished by the school committee with a written statement of the reasons therefor, and thereafter, if the refusal to admit or exclusion was unlawful, such pupil may recover from the town or, in the case of such refusal or exclusion by a regional school district from the district, in tort and may examine any member of the school committee or any other officer of the town or regional school district upon interrogatories.

Mass. Gen. L. c. 76, § 16.   Assuming that the Attleboro and the Administrators' failure to prevent peer-to-peer harassment or bullying constitutes a deprivation of Noelle's "advantages, privileges and courses of study" under § 16, the statute, on its face, contemplates that a student or their parent makes an application to the school committee and receives a written statement in response prior to recovering from the responsible town.   See Flaherty v. Conners, 319 F. Supp. 1284, 1286 (D. Mass. 1970) (discussing requests with school committee for a hearing and administrative exhaustion); Joseph F. Davis v. City of Boston, 133 Mass. 103, 105-06 (1882) (discussing circumstances in which parent is required to appeal to the school committee); see also Carr v. Inhabitants of Town of Dighton, 229 Mass. 304, 306, 118 N.E. 525 (1918) (noting when addressing an earlier version of the statute that a father "by letter . . . applied to the school committee for a statement in writing of the reasons for the exclusion, in accordance with R. L. c. 44, § 7).   Plaintiffs, however, do not allege that they sought redress with the school committee regarding Noelle's bullying or explain such a failure.

Plaintiffs cite to a decision from the MCAD, Beagan v. Town of Falmouth, 9 MDLR 1209 (MCAD 1987), in arguing that there is no "administrative prerequisite" to § 16.   D. 26 at 26.   This decision, however, does not support Plaintiffs' contention.   In Beagan, the MCAD stated that "Chapter 76, § 5 of the General Laws covers only public schools," 9 MDLR 1211, noting that the Department of Education has promulgated regulations to enforce § 5, id. (citing 603 CMR 26.00 et seq.), providing that disputes as to violations of the statute may be filed with the Bureau of Equal Educational Opportunity, id.   The MCAD went on to explain that, upon a

finding of noncompliance with § 5, "the Bureau may withhold funding to the local city or town, or initial legal action" and "[n]either the private action nor administrative route are mutually exclusive remedies." <u>Id.</u> at 1212 (citing 603 CMR 26.10).[9]

Even assuming Plaintiffs notified the school committee and received a response, the claim would likely be barred by § 10(j).  <u>See</u>  <u>Doe v. D'Agostino</u>, 367 F. Supp. 2d 157, 178 (D. Mass. 2005) (recognizing that "[a] claim that a student's 'ability to maximize his public education' was limited 'by the School's negligent failure to take action to remedy the harmful conduct of third parties . . . is precisely the type of claim from which the Legislature intended to immunize public entities pursuant to G.L. c. 258, § 10(j)").  Accordingly, Count VII is dismissed.

### G.      Count VIII – Massachusetts Equal Rights Act

Plaintiffs' claims under the Massachusetts Equal Rights Act ("MERA") against Attleboro and the Administrators must be dismissed based on the plain language of the statute, providing:

> All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Mass. Gen. L. c. 93, § 102(a).  On its face, MERA protects, among other things, the right to "make and enforce contracts."  <u>Id.</u> Plaintiffs fail to identify any contract (or other rights under MERA) at issue, meriting dismissal.  <u>See Harvard Law Sch. Coal. for Civil Rights v. President &</u>

---

[9] 603 CMR § 26.10 no longer appears in the regulations, but 603 CMR § 26.09 addresses § 5, and not § 16, stating that "[n]othing in 603 CMR § 26.00 shall abridge or in any way limit the right of a parent, guardian, or person affected to seek enforcement of M.G.L. c. 76, § 5 in any court or administrative agency of competent jurisdiction."

Fellows of Harvard Coll., 413 Mass. 66, 70 (1992) (affirming dismissal of a MERA claim because the "complaint failed to allege that the plaintiffs had a contract with the law school"); see also Driscoll, 2002 WL 15695, at *6 (granting summary judgment in a student harassment matter because "[t]he MERA protects the right to make and enforce contracts, and Morgan [did] not identif[y] any contractual right or opportunity which was lost or interfered with as a result of the conduct of the school officials, school committee or Town of Medway").

While Defendants assert that MERA is limited to employment discrimination claims, D. 13 at 23, the Supreme Judicial Court has applied MERA outside that context, see Currier v. Nat'l Bd. of Med. Examiners, 462 Mass. 1, 16 (2012) (denying summary judgment on a MERA claim in which a nursing mother sought extra breaks during a medical licensing exam). Currier is distinguishable, however, because plaintiff alleged that the policy "denie[d] her the benefits of her contractual relationship." Id. at 14. Plaintiffs do not identify a contractual relationship or allege that Attleboro's or the Administrators' conduct affected Noelle's right to make or enforce a contract or any other right under MERA, D. 26 at 26-27, and thus Count VIII is dismissed.

### H.      Count IX – Loss of Consortium

Corrine brings claims for loss of consortium against Attleboro and the Administrators, but does not sufficiently allege in what way she has suffered such a loss. D. 8 ¶ 160. Additionally, as discussed *supra*, Plaintiffs' negligence claims in Count IV are only asserted against Attleboro[10]— which have been dismissed—and a loss of consortium claim cannot stand without an underlying tortious act. See Bradshaw, 2013 WL 5236110, at *14 (citing Sena v. Commonwealth, 417 Mass. 250, 264 (Mass. 1994)).

---

[10] Claims brought against school officials in their official capacities are really claims against the town. See Bradshaw, 2013 WL 5236110, at *4 n.4 (collecting cases).

25

While not specifically alleged, D. 8 ¶¶ 159-160, Corrine presumably brings claims for loss of consortium under Mass. Gen. L. c. 231, § 85X, providing that "[t]he parents of a minor child . . . shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury." As recognized by the only court in this district to take up the issue, towns such as Attleboro are not considered a "person" within the language of the statute. See Bradshaw, 2013 WL 5236110, at *14 (noting that "Massachusetts appellate courts have not yet addressed whether a town is a 'person' under the loss of consortium statute, they have decided that other statutes using the word "person" do not include governmental entities"). The court reasoned that the definition of "person" provided in Mass. Gen. L. c. 4, § 7—applying to all Massachusetts statutes—includes "corporations, societies, associations and partnerships," but does not mention municipalities or government entities. Id. (citation omitted). Plaintiffs do not point to any contrary authority and the Court is unable to locate any. Accordingly, Count IX is dismissed.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part Defendants' motion to dismiss. D. 12. The Court ALLOWS Defendants' motion as to Counts II, III, IV, VI, VII, VIII and IX and those claims are DISMISSED. The Court DENIES Defendants' motion as to Count I. Count V is DISMISSED without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge